Tony **HARRIS**, Plaintiff,

v.

**DEL TACO, INC. dba Del Taco # 342; Leonard M. Kramer; and Does 1 through 10, Defendants.**

**No. SACV 04–730DOC(MLGX).**

United States District Court, C.D. California.

April 19, 2005.

Lynn Hubbard, III, Scottlynn J. Hubbard, IV, Lynn Hubbard III Law Offices, Chico, CA, for Plaintiff.

David Richard Sugden, Scott J. Ferrell, Call Jensen & Ferrell, Newport Beach, CA, for Defendants.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DISMISSING ALL CLAIMS; AND DENYING MOTION TO DEEM PLAINTIFF VEXATIOUS

CARTER, District Judge.

Before the Court are two motions by Defendants Del Taco, Inc. dba Del Taco # 342 and Leonard M. Kramer ("Defendants" or "Del Taco"): a motion for summary judgment and a motion to declare Plaintiff, Tony Harris, a vexatious litigant.[1] After reviewing the moving, opposing, and replying papers, hearing oral argument on Monday, April 18, 2005, and for the reasons stated below, the Court GRANTS Defendants' motion for summary judgment, DISMISSES all claims, and DENIES Defendants' motion to deem Plaintiff vexatious.

---

**1.** With their opposition, Plaintiff requested that the Court treat the opposition as a cross-motion for summary judgment. Plaintiff made no indication, however, that he complied with Local Rules 7–3 or 6–1. Thus, the Court simply considers the opposition to be a brief in opposition, and not a cross-motion for summary judgment.

## I. BACKGROUND

Mr. Harris has brought an action against Del Taco, a fast food restaurant, for injunctive relief from violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (1995) ("ADA"), and related state law claims for damages. These causes of action arise out of Mr. Harris's visit to Del Taco # 342, located at 22859 Lake Forest Drive, Lake Forest, California on April 21, 2004 when he pulled off the highway to eat. Harris Dep., 29:9–10. Mr. Harris was in a wheelchair when he visited Del Taco due to the fact that Mr. Harris sustained a number of permanent injuries in the past as a result of a motorcycle accident. While visiting Del Taco # 342, Mr. Harris encountered at least three aspects of the restaurant that he found to be frustrating. First, Mr. Harris parked in the parking lot outside of the restaurant and had difficulty going from his car to the restaurant because the disabled access lane cut across the drive-through lane, which was full of traffic. *Id.* at 31:20–32:1. Second, when Mr. Harris attempted to use the restaurant's restroom, Mr. Harris had difficulty transferring himself to the toilet because of the placement of the toilet paper dispenser near the grab bars. *Id.* at 32:3–8. Third, Mr. Harris had difficulty in finding a place to sit that would permit him to put his legs under the table. *Id.* at 33:6–11.

Mr. Harris also visited the same Del Taco on January 11, 2005, the day before his scheduled deposition. *Id.* at 35:14–16. Mr. Harris visited Del Taco on January 11, 2005 because "[he] know[s] where it is. It's not very far from the airport. And there's also a pharmacy right down the road from there, which [he] went over there and got some stuff also." *Id.* at 19–22. Between Mr. Harris's original visit to Del Taco on April 21, 2004 and the January 11, 2005 visit, Mr. Harris did not visit the Del Taco located in Lake Forest. Mr. Harris drove through the Lake Forest area, but did not visit the restaurant on that occasion. *Id.* at 36:18–37:4.[2] Additionally, Mr. Harris testified that he was not sure whether he had visited any Del Taco between April 21, 2004 and January 11, 2005. *Id.* at 30:24–31:6.[3] In opposition to the motion for summary judgment Mr. Harris submitted a declaration, which states in full:

I, Tony Harris, do hereby declare the following:

1. I have a disability placard issued by the State of California to park in disabled spaces.

2. I visited the Del Taco restaurant located at 22859 Lake Forest Road, in Lake Forest, California, on April 21, 2004, because I was traveling on the nearby freeway and wanted to get a bite to eat.

---

**2.** The testimony at Mr. Harris's deposition is as follows:

Mr. Ferrell: Okay. Between April 21st when you first visited the restaurant and January 11th when you went back to the restaurant yesterday, were you ever in the Lake Forest area again?

Mr. Harris: I drove through.

Q: Did you have any desire to visit the restaurant on that occasion?

A: No. I wasn't hungry, sir.

Q: Okay. So between April 21st and yesterday, you haven't desired to go back to the specific Del Taco Number 342?

A: Correct, sir.

Harris Dep., 36:18–37:4.

**3.** The testimony at the deposition was in response to an interrupted question as follows:

Mr. Ferrell: to January 11, 2005 And between that time of April 21, 2004 you haven't visited Del Taco again?

Mr. Beauchane: Specifically the Del Taco on Lake Forest–

Mr. Ferrell: Any Del Taco.

Mr. Harris: I'm not too sure of that, sir.

Harris Dep., 30:24–31:6.

3. I frequently travel through the area while visiting my brother and would stop at the restaurant if I were hungry.

4. I would be more inclined to stop at the restaurant if it were accessible.

5. I never said that I have 'no desire to return' to the restaurant.

I declare under the penalty of perjury that the aforementioned facts are true and correct and if called upon to testify in the above matters, I could do so competently.

Harris Decl., p. 2. In Plaintiff's memorandum in opposition to the motion for summary judgment, Plaintiff's counsel asserts that Mr. Harris's declaration is credible "[i]n light of the frequency that he visits the San Diego area, and the close proximity of the restaurant to the freeway between San Diego and Cottonwood." Opp., p. 11. Although Plaintiffs have presented no evidence that Mr. Harris's brother lives in San Diego, the Court assumes that to be true based on counsel's assertion in the memorandum.

■ Mr. Harris's residence, in Cottonwood, California, is approximately 573.66 miles (8 hours, 35 minutes) from Del Taco # 342 when traveling on Interstate Freeway Five ("the I–5").[4] The distance between Mr. Harris's residence and San Diego is approximately 650 miles on the I–5. The distance between Del Taco # 342 and San Diego is approximately 78 miles on the I–5.

## II. MOTION FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; to defeat the motion, the non-moving party must affirmatively set forth facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Id.* at 256, 106 S.Ct. at 2514. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The moving party need not disprove the other party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

---

4. Defendants have requested that the Court take judicial notice of the distance between Mr. Harris's residence and Del Taco # 342. This distance is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed.R.Evid. 201. Thus, the Court takes judicial notice of this distance.

appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991); *Foster v. Arcata Assocs.,* 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Radobenko v. Automated Equip. Corp.,* 520 F.2d 540, 543–44 (9th Cir.1975). *See also Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806, 119 S.Ct. 1597, 1604, 143 L.Ed.2d 966 (1999) (acknowledging that lower courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement ... without explaining the contradiction or attempting to resolve the disparity"). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy,* 952 F.2d at 266 (quotations and citations omitted). If a court finds that a contradictory affidavit is introduced to create a sham issue of fact and is not legitimately introduced to explain portions of earlier deposition testimony, then the court can disregard that sham affidavit and grant summary judgment. *See id.* at 266–67.

## B. MR. HARRIS LACKS STANDING TO ASSERT HIS CLAIM FOR INJUNCTIVE RELIEF UNDER THE ADA

■ The dispositive issue on this motion for summary judgment is whether Mr. Harris has a sufficient intent to return to Del Taco to establish that he will suffer an *imminent* injury in fact. Under the ADA, a private individual can sue for injunctive relief from a violation of the provisions of the ADA. *See* 42 U.S.C. § 12188(a). To succeed on his claim for injunctive relief, Mr. Harris must, of course, satisfy Article III's case or controversy requirement. "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Each element of standing is "an indispensable part of the plaintiff's case" and accordingly "must be supported in the same way as any other matter on which the plaintiff bears the burden, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Thus, to withstand Del Taco's motion for summary judgment, Mr. Harris must demonstrate that sufficient evidence exists to permit a reasonable jury to find by a preponderance of the evidence that Mr. Harris has standing.

■■ To establish standing, Mr. Harris must demonstrate (1) that he has suffered an injury in fact; (2) that the injury is traceable to the challenged action of Del Taco, and (3) that the injury can be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. at 2136. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized .... and (b) actual or imminent, not, conjectural or hypothetical." *Id.* "In the context of declaratory and injunctive relief, [Mr. Harris] must demonstrate that [he] has suffered or is threatened with a 'con-

crete and particularized' legal harm ... coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Bird v. Lewis & Clark College,* 303 F.3d 1015, 1019 (9th Cir.2002) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. at 2136 and *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665, *as quoted in Lujan v. Defenders of Wildlife,* 504 U.S. at 564, 112 S.Ct. at 2138.

■ In *Lujan v. Defenders of Wildlife,* Justice Scalia, writing for the Court, explained that a mere profession of an intent to do some act that may cause an injury at some indefinite time in the future is not sufficient to establish that injury is *imminent. Lujan v. Defenders of Wildlife,* 504 U.S. at 564, 112 S.Ct. at 2138. In that case, Defenders of Wildlife challenged a number of construction projects occurring abroad, including projects located in Egypt and Sri Lanka. Defenders of Wildlife attempted to establish standing by way of affidavits of two of their members. Both members had traveled to the places affected by the development and stated that they intended and hoped to return to the areas to observe endangered species in the future, although they had no specific plans to do so. *Id.* The Supreme Court found that the affiants' "profession of an 'inten[t]' to return to the places they had visited before ... is simply not enough." *Id.* Justice Scalia continued: "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* someday will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife,* 504 U.S. at 564, 112 S.Ct. at 2138. The purpose of the imminence requirement is "to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* at 564 n. 2, 112 S.Ct. at 2138 n. 2.

■ The Ninth Circuit, in *Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133 (9th Cir.2002), considered the issue of when a plaintiff has standing to seek injunctive relief under the ADA. In that case, the plaintiff, Jerry Doran, sued a grocery store, Holiday Quality Foods, in Paradise, California, for non-compliance with the ADA. *Pickern,* 293 F.3d at 1135. Doran lived in Cottonwood, California, approximately 70 miles from the Holiday store in Paradise, but his grandmother lived in Paradise and he visited his grandmother almost every Sunday. *Id.* Doran stated in a declaration: "My favorite grocery store chain is the Holiday Foods grocery stores. When I need to buy groceries, I look first to Holiday Foods grocery stores." *Id.* He additionally stated that he would like to patronize the Paradise store when he visits his grandmother, but is deterred from doing so by the store's allegedly unlawful barriers. *Id.* The Ninth Circuit held:

[A] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'

*Id.* at 1138. With respect to the imminence requirement, Judge William Fletcher, writing for a panel that also included Judges Thompson and Berzon, reasoned as follows:

Doran has visited Holiday's Paradise store in the past and states that he has actual knowledge of the barriers to access at that store. Doran also states

that he prefers to shop at Holiday markets and that he would shop at the Paradise market if it were accessible. This is sufficient to establish actual or imminent injury for purposes of standing.

*Pickern,* 293 F.3d at 1138. Thus, under *Pickern,* an ADA plaintiff can demonstrate actual or imminent injury by establishing that he or she intends to return to the public accommodation if it is made accessible. *See also Molski v. Price,* 224 F.R.D. 479, 483 (C.D.Cal.2004) (stating that *Pickern* stands for the rule that "in order to have standing to seek injunctive relief, an ADA plaintiff must establish that he has knowledge of architectural barriers at a place of public accommodation, and that he intends to return to the public accommodation if it is made accessible."). *Pickern* does not, however, resolve the more fact-intensive question of *how* a plaintiff properly demonstrates the required intent to return.

*Pickern* also cites with approval, albeit on a different issue, an Eighth Circuit case, *Steger v. Franco, Inc.,* 228 F.3d 889 (8th Cir.2000). In *Steger,* the Eighth Circuit held that three of the four disabled plaintiffs lacked standing to sue for injunctive relief from alleged violations of the ADA where those three plaintiffs did not visit the public accommodations at issue and they presented no evidence regarding their knowledge of the building's barriers or their likelihood to visit the building in the imminent future. *Steger,* 228 F.3d at 893. The fourth disabled plaintiff, however, did have standing to sue for injunctive relief because he had visited the public accommodations at issue, he had been unable to access the men's restroom due to a lack of signage, and he "testified that he

frequently visits government offices and private businesses in [the area of the public accommodations at issue] as a sales and marketing employee." *Id.* at 891–93.

Although Mr. Harris's complaint indicated that he would return to the Del Taco # 342 in the future if the alleged barriers were removed, the facts of the case indicate otherwise. In determining whether a plaintiff's likelihood of returning to a defendant is sufficient to confer standing, courts have examined factors such as "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Molski v. Arby's Huntington Beach,* 359 F.Supp.2d 938, 947 n. 10 (C.D.Cal.2005). Based on Mr. Harris's deposition testimony, it is clear that Mr. Harris lacks standing to assert his claim for injunctive relief. Mr. Harris lives 573.66 miles away from Del Taco # 342. At the time of filing the complaint,[5] Mr. Harris had been to Del Taco # 342 exactly once, on April 21, 2004. At his deposition, Mr. Harris testified that he visited Del Taco # 342 on April 21 because he was traveling though the area on the I–5. Mr. Harris stated that after the initial visit he did not return to Del Taco # 342 and did not desire to return. Additionally, when asked whether he had visited any restaurant in the Del Taco chain, Mr. Harris stated that he was uncertain.

The most obvious difficulty for Mr. Harris is the great distance between his residence and Del Taco # 342 (573.66 miles). This distance initially suggests that, without some sort of explanation, Mr. Harris is

5. In assessing whether Mr. Harris has standing to sue, it is important to keep in mind that standing is determined as of the time of the filing of the complaint. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 191, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000).

unlikely ever to visit Del Taco # 342 again. Unlike the plaintiff in *Pickern*, who declared that the Holiday grocery store chain was his favorite grocery store and that he frequented the Holiday grocery store in his town, nothing indicates that Mr. Harris is likely visit Del Taco # 342 again because Del Taco is his favorite restaurant or even his favorite Mexican fast-food chain. *See Pickern*, 293 F.3d at 1135. Unlike Jarek Molski, "the self-proclaimed 'Sheriff,'" nothing indicates that Mr. Harris is likely to return to Del Taco # 342 to determine whether it has come into compliance with the ADA. *See Molski v. Arby's Huntington Beach*, 359 F.Supp.2d 938, 941 (C.D.Cal.2005); *see, e.g., Molski v. Franklin*, 222 F.R.D. 433 (S.D.Cal.2004); *Molski v. Price*, 224 F.R.D. 479 (E.D.Cal.2004); *Molski v. Mandarin Touch Rest.*, 347 F.Supp.2d 860 (E.D.Cal.2004); *Molski v. Mandarin Touch Rest.*, 359 F.Supp.2d 924 (C.D.Cal.2005). Rather, Mr. Harris's only explanation for why he would return to a Del Taco that is located 573.66 miles from his home is that he frequently travels through the area while visiting his brother and would stop at the restaurant if he were hungry. Harris Decl., ¶ 3. Based on Mr. Harris's counsel's representation in his memorandum, the Court infers that Mr. Harris's brother lives in San Diego, approximately 78 miles away from Del Taco # 342.

Mr. Harris's argument is deficient for a number of reasons. First, the procedural problem with Mr. Harris's explanation is that it comes to the Court by way of a declaration filed only in opposition to Del Taco's motion for summary judgment. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy*, 952 F.2d at 266. It is clear to the Court that Mr. Harris's declaration is intended solely to create an issue of fact in order to withstand summary judgment. At his deposition, in response to the question, "So between April 21st and yesterday [January 10, 2005], you haven't desired to go back to the specific Del Taco Number 342?" Mr. Harris answered, "Correct, sir." Harris Dep., 37:1–4. In his declaration, Mr. Harris asserts that he frequently travels through the area while visiting his brother and would stop at the restaurant if he were hungry, that he would be more inclined to stop at the restaurant if it were accessible, and that he "never said that [he has] 'no desire to return' to the restaurant." Harris Decl., ¶¶ 3–5. While Mr. Harris's statements at his deposition and in his declaration are not wholly inconsistent, Mr. Harris had every opportunity at his deposition to voice his desire to return to Del Taco # 342. Mr. Harris was specifically asked whether he desired to return to Del Taco # 342 between the time that he initially visited it and the time that he filed his complaint, and Mr. Harris unequivocally stated that he did not. The leading form of the question does not undermine the fact that both the question and the answer were clear and unequivocal. Mr. Harris's declaration is not an attempt to explain or clarify his deposition testimony. Rather, Mr. Harris's declaration is a blatant attempt to create a sham issue of fact. Thus, the Court disregards it.

Even if the Court were to consider Mr. Harris's declaration, it would not present compelling evidence of Mr. Harris's purported desire to return to Del Taco # 342. It may be true that Mr. Harris, who lives in Cottonwood, frequently drives to visit his brother in San Diego. But Mr. Harris has presented no evidence that distinguishes Del Taco # 342 from any other fast-food restaurant located near the I–5 between Cottonwood and San Diego. The mere fact that Mr. Harris frequently drives from Cottonwood to San Diego does not give Mr. Harris standing to sue every

public accommodation located anywhere on that 650–mile stretch of the I–5. Mr. Harris's assertions that he would stop at Del Taco # 342 if he were hungry and that he would be more inclined to stop if the restaurant were accessible are too conjectural and hypothetical to satisfy the requirement that a plaintiff must demonstrate a threat of imminent future injury in order to obtain injunctive relief.

At oral argument, counsel for Mr. Harris essentially urged the Court to carve out a fast food exception to the rule that plaintiffs who seek injunctive relief must demonstrate that they face a real and immediate threat of future harm. As support for that argument, counsel cites *Parr v. L & L Drive–Inn Restaurant*, 96 F.Supp.2d 1065 (D.Hawai'i 2000). In that case, the district court noted that "concrete plans to return, as exhibited by a hotel reservation or an airplane ticket, could demonstrate an 'actual or imminent' injury." *Parr*, 96 F.Supp.2d at 1079. The district court distinguished the facts before it, however, by noting that the defendant was a fast food restaurant. *Id.* As the court stated:

> Visiting a fast food restaurant, as opposed to a hotel or professional office, is not the sort of event that requires advance planning or the need for a reservation. Fast food restaurants ... do not take reservations. Therefore ... specification as to a date and time of returning to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment. Once a person determines that he or she likes a fast food restaurant, that person's return is on impulse.

*Id.* This passage from *Parr* presumably forms the basis for counsel's argument that plaintiffs like Mr. Harris should be allowed to sue fast food restaurants regardless of whether the plaintiff has demonstrated any present intention to return.

While the Court can accept the general notion that many people may visit fast food restaurants on a whim, the Court cannot create a special exception to the Article III standing doctrine for plaintiffs who sue fast food restaurants. The fact that people impulsively consume fast food only negates a plaintiff's ability to demonstrate intent to return by way of reservations or other definite plans. That fact cannot negate the requirement that a plaintiff must demonstrate that he or she has standing to assert a claim for injunctive relief. A plaintiff suing a fast food restaurant must simply demonstrate his or her intent to return some other way.

The plaintiff in *Parr*, for example, had "developed a taste for [defendant] L & L's food and has visited various L & L restaurants across the island of Oahu. In particular, Plaintiff intends to visit the [defendant] Liliha L & L in the future." *Id.* Mr. Harris's apparent lack of predilection for Del Taco's food distinguishes this case from *Parr*. Nowhere has Mr. Harris asserted that he has developed a taste for Del Taco. Mr. Harris, in his deposition, did not recollect whether he had visited any other Del Taco restaurants. Thus, Mr. Harris is unlike the plaintiff in *Parr* who demonstrated his intent to return to the restaurant by asserting that he especially enjoyed the defendant's food. It is important to note that Mr. Harris need not love Del Taco food in order to sue any Del Taco restaurant. Mr. Harris could have demonstrated his intent to return in any number of ways. Nothing in the record indicates to the Court that Mr. Harris intends to return to Del Taco # 342.

█ Counsel for Mr. Harris also suggested that the fact that Mr. Harris returned to Del Taco # 342 once on the day before his deposition creates at least a triable issue of fact as to whether Mr. Harris intends to return to Del Taco

# 342. This argument fails because standing must be determined as of the time of the filing of the complaint. *See Friends of the Earth, Inc.*, 528 U.S. 167, 191, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000). At his deposition, Mr. Harris testified that he returned to Del Taco # 342 on the previous day because it was near the airport, because he knew where it was, and because there was a pharmacy nearby. The Court cannot consider this visit as evidence that Mr. Harris intended to return to Del Taco # 342 at the time that he filed his complaint. If the courts were to consider this type of visit as evidence of intent to return, plaintiffs could easily manufacture standing. At his deposition, Mr. Harris clearly agreed that between his initial visit and his pre-deposition visit, he had no desire to return to Del Taco # 342. One pre-deposition visit to the defendant restaurant when the plaintiff is in the area in order to be deposed for his action against the defendant cannot establish intent to return in the face of such clear testimony to the contrary and such a clear lack of other evidence demonstrating intent to return.

Thus, Mr. Harris lacks standing to assert a claim for injunctive relief under the ADA; the First Claim for Relief is DISMISSED. All remaining claims for relief arise under California state law. Accordingly, the Court declines to exercise supplemental jurisdiction over those claims; they are DISMISSED WITHOUT PREJUDICE. *See* 28 U.S.C. § 1367(c)(3).

### III. MOTION TO DEEM PLAINTIFF AND PLAINTIFF'S COUNSEL VEXATIOUS

Because the Court has dismissed the federal claim for lack of jurisdiction and declined supplemental jurisdiction over the remainder of the claims, the Court lacks jurisdiction to adjudicate Del Taco's motion to deem Plaintiff and Plaintiff's counsel vexatious litigants. Accordingly, the motion is DENIED.

### IV. DISPOSITION

For the reasons stated above, the First Claim for Relief is DISMISSED WITH PREJUDICE. All remaining claims (Second, Third, Fourth, and Fifth) are DISMISSED WITHOUT PREJUDICE. Defendant's motion to deem Plaintiff and Plaintiff's counsel vexatious is DENIED.

IT IS SO ORDERED.