Jarek MOLSKI, an individual; and Disability Rights Enforcement, Education Services; Helping You Help Others, a California public benefit corporation, Plaintiffs,

v.

ARBY'S HUNTINGTON BEACH; Cambridge Investments LLC, a Delaware limited liability company; Peter Chamie, sole Trustee of the Alfred P. Chamie and Elizabeth Chamie Revocable Trust UDT dated August 14, 1970, Defendants.

No. SA CV 04–0038 CJC.

United States District Court,
C.D. California,
Southern Division.

March 14, 2005.

Stephen Yagman, Marion R. Yagman, Joseph Reichmann, Yagman & Yagman & Reichmann, Venice Beach, Erwin Chemerinsky, Duke Law School, Durham, NC, Thomas E. Frankovich, Thuy Minh–Ha Hoang, Frankovich Group, San Francisco, CA, for plaintiffs.

Joseph M. Parker, David B. Geerdes, Heller, Ehrman, White & McAuliffe, San Diego, CA, for defendants.

**MEMORANDUM DECISION DISCHARGING ORDER TO SHOW CAUSE REGARDING SUBJECT MATTER JURISDICTION**

CARNEY, District Judge.

## I. INTRODUCTION

The issue presented by the Court's Order to Show Cause involves the showing

required to establish jurisdiction for a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[1] The plaintiff in this case, Jarek Molski, is a wheelchair bound paraplegic who alleges he visited Defendants' Arby's Huntington Beach Restaurant ("Arby's") in January of 2003.[2] Mr. Molski alleges he was denied full access to and enjoyment of the restaurant due to architectural barriers. By his own admission, Mr. Molski has filed hundreds of similar lawsuits in federal courts throughout California against other restaurants and places of business. A review of the complaints filed in many of these lawsuits reveals that the facts alleged, the claims presented, and the damages requested are virtually identical.

In response to the Court's Order to Show Cause, Defendants argue Mr. Molski's litigious activities demonstrate that his ADA claim in this case is brought in bad faith. Defendants assert that Mr. Molski did not visit the restaurant to eat and enjoy the food, but instead visited it to manufacture a lawsuit so he could extort a monetary settlement. According to Defendants, the Court should dismiss Mr. Molski's ADA claim for lack of jurisdiction and standing.

The Court, however, cannot dismiss Mr. Molski's ADA claim for lack of jurisdiction and standing at this early stage of the case. There is no legal authority to support the proposition that a District Court can dismiss an ADA claim on jurisdictional and standing grounds because of a plaintiff's motive for visiting a place of public accommodation. It simply does not matter, from a jurisdictional and standing point of view, what Mr. Molski's motivation was for visiting Arby's. All that matters is that Mr. Molski alleges he did visit the restaurant, he was denied full access to and enjoyment of the premises because of architectural barriers, and he would return to the restaurant if those barriers are removed. Mr. Molski clearly has pled these essential allegations in the Complaint he filed in this case. Therefore, regardless of

1. On December 27, 2004, the Court, on its own initiative, issued orders to show cause in six matters involving Mr. Molski: *Molski v. Arby's Huntington Beach* (SACV 04–0038 CJC (ANx)), *Molski v. Mexi–Casa Restaurant* (SACV 04–0083 CJC (SSx)), *Molski v. Gardena Bowling Center, Inc.* (SACV 04–0092 CJC (AJWx)), *Molski v. Entertainment Center* (SACV 04–0096 CJC (JWJx)), *Molski v. MGM Pizza Corp.* (SACV 04–1056 CJC (ANx)), and *Molski v. Verma* (SACV 04–1297 CJC (ANx)). In the orders to show cause, the Court requested briefing on why Plaintiffs' Complaints should not be dismissed for lack of subject matter jurisdiction. The Court issued the order in light of the opinion in *Molski v. Mandarin Touch Restaurant,* 347 F.Supp.2d 860 (C.D.Cal.2004). Concerned by the Court's indication in *Mandarin Touch Restaurant* that Mr. Molski's ADA claims in that case may be a sham, used as a pretext to gain access to the federal courts while pursuing state law remedies, this Court was required to ascertain the propriety of its exercise of jurisdiction in cases involving Mr. Molski. On February 28, 2005, the Court held a hearing for the six matters, providing all counsel for Mr. Molski and all counsel for the various defendants the opportunity to present argument. For purposes of evaluating the orders to show cause, the Court considered the arguments of Mr. Molski's counsel collectively and the arguments of counsel for the various defendants collectively. At the conclusion of the hearing, the Court discharged the orders to show cause from the bench. The Court now issues this Order, detailing its reasoning and analysis.

2. The Complaint in this action named both Mr. Molski and Disability Rights Enforcement, Education Services: Helping You Help Others ("DREES") as Plaintiffs. Although the Court's Order to Show Cause referred to both Plaintiffs, Mr. Molski and DREES, this Order considers only Mr. Molski's satisfaction of the jurisdictional elements and treats him as the only plaintiff. This is because Mr. Molski appears to be the primary plaintiff in this action. Issues regarding DREES' ability to pursue its claims may be raised at a later time.

whether Mr. Molski is a vexatious litigant out to extort a monetary settlement from Defendants, or whether he is a sheriff policing Defendants' restaurant to ensure compliance with the ADA, Mr. Molski has properly alleged standing to assert his ADA claim and this Court has jurisdiction over that claim.

## II. FACTUAL BACKGROUND

### A. MR. MOLSKI'S PROLIFIC LITIGATION HISTORY

Mr. Molski, the self-proclaimed "Sheriff" and an activist, became paralyzed at the age of 18 following a motorcycle accident and uses a wheelchair for mobility. Molski Decl.[3] ¶ 1; Plaintiffs' Br. 3. Despite obtaining a law degree and two degrees in taxation, Mr. Molski put aside his desire to practice tax law "because of the existence of immense discrimination by public accommodations against disabled persons." Molski Decl. ¶ 4. During law school, while performing legal research to draft a letter to the owners of his rented apartment (which he states was not ADA-compliant), Mr. Molski "discovered that there were many activists who were at the time suing hundreds of public accommodations each year." Id. ¶ 9. Three or four years later, Mr. Molski followed suit and began filing "large volumes of lawsuits." Molski Decl. ¶ 9. Mr. Molski admits to having filed 300–400 actions for ADA violations and settling approximately half of them.[4] Id. ¶ 14.

According to Mr. Molski, his love of traveling and "overall drive for life" results in visits to numerous public establishments along the California coast, with Mr. Molski sometimes visiting three restaurants and numerous wineries in one day. Id. ¶¶ 11, 15. Mr. Molski states this extensive traveling and enjoyment of life explains his filing of complaints against 13 establishments for virtually identical injuries sustained in a 5–day period. Id. ¶ 11. Mr. Molski acknowledges that all the complaints he files describe the same major barriers and injuries. Id. ¶ 25. Although asserting that injunctive relief is the primary focus of all settlement negotiations with defendants in the cases he files, Mr. Molski's counsel admits that initial monetary settlement demands in Mr. Molski's cases generally range from $30,000 to $50,000, depending on the amount of incurred attorneys' fees. Plaintiffs' Br. 11.

### B. MR. MOLSKI'S COMPLAINT IN THIS CASE

Mr. Molski filed a Complaint against Defendants on January 14, 2004 for violations of the ADA at Arby's. The Complaint alleges Arby's, located in Huntington Beach, California, is a place of "public accommodation" that is owned and/or operated by Cambridge Investments and Peter Chamie. Compl. ¶ 7. According to the Complaint, Mr. Molski, a paraplegic who

---

3. Mr. Molski's declaration was attached as Exhibit A to Plaintiffs' Request for Judicial Notice, filed with the Court on February 7, 2005. The declaration originally was submitted in response to the Order to Show Cause issued in *Mandarin Touch Restaurant*, CV 04–0450 ER, on January 31, 2005. For purposes of the Court's evaluation of the Order to Show Cause, the Court will accept Mr. Molski's statements in his declaration as true.

4. According to Defendants, Mr. Molski has filed 392 lawsuits in the United States District Courts for the Northern, Southern, and Central Districts of California, 223 of which were filed in 2004 alone. Of the 392 lawsuits filed by Mr. Molski, 220 have been against restaurants, 51 against wineries and vineyards, 25 against bowling alleys, 35 against banks, 23 against gasoline and automotive stations, and 36 against retail outlets and other types of businesses. Defendants' Br. 1–2. The Court's opinion in *Molski v. Price*, issued August 24, 2004, notes that at a deposition conducted in that matter, Mr. Molski stated he contemplated filing an additional 200 to 400 ADA cases. *Molski v. Price*, 224 F.R.D. 479, 481 (C.D.Cal.2004).

requires use of a wheelchair to travel in public, visited Arby's on January 23, 2003. *Id.* ¶¶ 13; 19. Mr. Molski alleges that during this visit, he was discriminatorily denied access to full and equal enjoyment of the services and accommodations of Arby's because of Defendants' failure to remove architectural barriers. *Id.* ¶ 1. Specifically, according to the Complaint, when Mr. Molski visited Arby's in order to have a late afternoon snack, he discovered that the restaurant did not have a van accessible handicapped spot and there was "no signage." *Id.* ¶ 19–20. Furthermore, Mr. Molski contends a ramp "encroached in the access aisle." *Id.* ¶ 20. After having his snack, Mr. Molski asserts he attempted to use the restroom and, due to excessive door pressure (25 lbs.), he became wedged banging his hands. *Id.* ¶ 21. Mr. Molski also claims he discovered that both the men's restroom and the women's restroom were inaccessible due to a lack of grab bars and turning radius. *Id.* ¶ 22. Mr. Molski asserts he was denied his civil rights and suffered fatigue, stress, strain and pain, physical discomfort, emotional distress, mental suffering, and mental anguish (shame, humiliation, embarrassment, anger, chagrin, disappointment and worry) as a result of Defendants' failure to provide a fully-accessible public facility. *Id.* ¶ 27. Mr. Molski alleges the failure to remove the architectural barriers continues to create and repeatedly exposes him to fatigue, stress and strain. *Id.* ¶ 28. Mr. Molski seeks injunctive relief to require Arby's to be made fully accessible and meet the requirements of the ADA and California law. *Id.* ¶ 32. Mr. Molski also seeks damages for violations of his rights under California law. *Id.* ¶ 34. Mr. Molski asserts he would and will return to Arby's if it is made accessible to persons with disabilities. *Id.* ¶ 42.

## III. AT THIS JUNCTURE, THE COURT'S EXERCISE OF JURISDICTION IS APPROPRIATE

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Insurance Co. Of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Courts have the authority to dismiss actions sua sponte for lack of jurisdiction (*Franklin v. State of Oregon, State Welfare Division,* 662 F.2d 1337, 1342 (9th Cir.1981)) and are required sua sponte to examine jurisdictional issues such as standing (*B.C. v. Plumas Unified School District,* 192 F.3d 1260, 1264 (9th Cir. 1999)). This is because

> [n]othing is to be more jealously guarded by a court than its jurisdiction. Jurisdiction is what its power rests upon. Without jurisdiction it is nothing. Especially at a time when the burden of litigation in the federal courts reaches a peak thought improbable only a few years ago, it is imperative that any attempt to impose upon federal jurisdiction by pleadings without legal justification must be vigorously discouraged.

*In re Mooney,* 841 F.2d 1003, 1006 (9th Cir.1988) (*overruled on other grounds by Partington v. Gedan,* 923 F.2d 686 (9th Cir.1991)).

It is "rudimentary law that '[a]s regards all courts of the United States . . . two things are necessary to create jurisdiction . . . . The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it* . . . . To the extent that such action is not taken, the power lies dormant.'" *Finley v. United States,* 490 U.S. 545, 548, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (emphasis in original) (internal citation omitted). Therefore, for a federal court to exercise jurisdiction, the case must fall within both a statutory grant of jurisdiction and the confines of Article III of the Constitution,

the source of all federal judicial power. The scope of the Court's jurisdiction is "not to be expanded by judicial decree." *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673 (*citing American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951)). The burden of establishing the appropriateness of the Court's exercise of jurisdiction lies with the party asserting jurisdiction. *Id.* (*citing McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182–183, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

## A. MR. MOLSKI DOES NOT PRESENT A SHAM ADA CLAIM THAT IS IMMATERIAL OR WHOLLY INSUBSTANTIAL AND FRIVOLOUS

■ Where a complaint seeks recovery directly under the Constitution or the laws of the United States, federal courts are obligated to entertain the suit. *Bell v. Hood,* 327 U.S. 678, 681–682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). An exception to the court's mandatory exercise of jurisdiction exists, however, where the alleged claim under a federal statute "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–683, 66 S.Ct. 773. The Supreme Court has stated that dismissal of actions on the basis of subject matter jurisdiction is appropriate when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as

not to involve a federal controversy." *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). In contrast, "[a]ny non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction." *Cement Masons Health and Welfare Trust Fund for Northern California v. Stone,* 197 F.3d 1003, 1008 (9th Cir.1999). Once the court determines a plaintiff's jurisdiction-conferring claims are not frivolous and immaterial, there is no further inquiry regarding the merits of the claim for purposes of jurisdiction. *Hagans v. Lavine,* 415 U.S. 528, 542 n. 10, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

■ Mr. Molski's exercise of this Court's jurisdiction rests on his claim that Defendants violated the ADA, a federal statute, by discriminating against him in a place of public accommodation.[5] Reviewing Mr. Molski's claim under the ADA, and based on the present record, the Court cannot conclude Mr. Molski's ADA claims are "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Bell,* 327 U.S. at 682–683, 66 S.Ct. 773. The ADA claim is an integral part of Mr. Molski's federal complaint. The ADA regulations identified in Mr. Molski's Complaint establish accessibility guidelines to be adhered to by places of public accommodation and the failure to adhere to such guidelines is actionable. Mr. Molski specifically alleges discrimination on the basis of Arby's failure to provide him full and

5. Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA defines discrimination to include "a failure to remove architectural barriers" in existing facilities. 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA authorizes injunctive relief for disabled individuals who suffer prohibited discrimination. 42 U.S.C. § 12188(a)(2). The ADA does not permit the recovery of monetary damages by private individuals. *Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1136 (9th Cir. 2002). In addition to his claims under the ADA, Mr. Molski also sets forth claims for violations of California disability, health and safety, and unfair business laws.

equal access to and enjoyment of the restaurant, a right guaranteed by the ADA.

Contrary to Defendants' assertions, the fact that Mr. Molski has filed hundreds of virtually identical lawsuits throughout the Central District of California alleging violations of the ADA and routinely dismissed such matters in exchange for a monetary settlement is irrelevant for purposes of this Court's examination of its own jurisdiction.[6] Similarly irrelevant is the fact that Mr. Molski adds to his Complaint claims pursuant to California law that are redundant to his ADA claim, with the exception that the California claims seek the recovery of significant monetary damages.[7] The Court is aware of no authority that suggests Plaintiff's motivation in filing suit, whether it be recovery of monetary damages under analogous state law and attorneys' fees or forcing public facilities to adhere to the ADA, is a factor to be evaluated by the Court in reviewing its own jurisdiction. Indeed, a rule requiring the Court to examine plaintiffs' motivations prior to exercising the Court's jurisdiction would run afoul of our system of jurisprudence and place the Court in the compromising position of weighing facts and making credibility determinations at the early pleading stage. In any event, since Mr. Molski has adhered to the statutory framework and has alleged a material, non-frivolous, and substantial violation of federal law, this Court has "a 'virtually unflagging obligation ... to exercise the jurisdiction given [it].'" *Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (*quoting Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

## B. MR. MOLSKI HAS STANDING TO SEEK INJUNCTIVE RELIEF

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Therefore, a plaintiff bringing suit "must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution" of significant issues. *Id.* (*quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The concept of standing embodies this limitation on the power of federal courts to adjudicate cases. The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition to the injury being traceable to

---

**6.** The filing of hundreds of lawsuits by individual plaintiffs is not a matter unique to the Central District of California. As noted by the Court in *Brother v. Tiger Partner, LLC,* from the Middle District of Florida, "it should be emphasized that the system for adjudicating disputes under the ADA cries out for a legislative solution. Only Congress can respond to vexatious litigation tactics that otherwise comply with its statutory framework. Instead of promoting 'conciliation and voluntary compliance,' the existing law encourages massive litigation.... This is particularly the case in the Middle District of Florida where the same plaintiffs file hundreds of lawsuits against establishments they purportedly visit regularly. This type of shotgun litigation undermines the spirit and purpose of the ADA." *Brother v. Tiger Partner, LLC,* 331 F.Supp.2d 1368, 1375 (M.D.Fla.2004).

**7.** The Court's analysis is limited to the sole issue of whether the Court has jurisdiction to adjudicate the ADA claim. At oral argument, Defendants raised the issue of the Court's exercise of supplemental jurisdiction over Mr. Molski's state law claims. As this issue was not properly briefed or thoroughly argued, the Court does not address it. The parties are, of course, free to re-raise the issue.

the challenged action of the defendant (causation), and the injury capable of being redressed by a favorable decision (redressability),[8] the plaintiff must have suffered an injury in fact. *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1019 (9th Cir.2002) (*citing Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir.2001)). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent', not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (internal citations omitted). When seeking injunctive or declaratory relief, a plaintiff seeking to establish standing must demonstrate such an invasion of a legally protected interest along with a "sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111, 103 S.Ct. 1660. This is because "'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* at 102, 103 S.Ct. 1660 (*citing O'Shea v. Littleton*, 414 U.S. 488, 495–496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* The Court may presume "that the general allegations in the complaint encompass the specific facts necessary to support those allegations." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

▬ In the context of the ADA's standing requirement for injunctive relief, a plaintiff must allege that a public accommodation has discriminated against him and that there is a "real or immediate threat that the [public accommodation] will again subject [him] to discrimination." *Bird*, 303 F.3d at 1019. This can be done by a plaintiff showing he has encountered (or has knowledge of) barriers at a place of public accommodation and he intends to return to the public accommodation in the future. *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137–1138 (9th Cir.2002).

In *Pickern*, the plaintiff, a paraplegic who used a wheelchair, encountered architectural barriers when visiting a market near his grandmother's home. *Id.* at 1135–1136. The plaintiff visited the market a second time, waiting in the parking lot (because of the barriers encountered previously) while his companion went inside to shop. *Id.* at 1136. Plaintiff asserted that although his grandmother (and the market) were 70 miles away from his home, he frequently went to see his grandmother and was a *regular customer* of the market chain in his own hometown. *Id.* at 1135. More than one year after his initial visit to the market, the plaintiff filed suit. *Id.* Overturning the District Court's dismissal on statute of limitations grounds, the Ninth Circuit concluded the plaintiff was not required to make the "futile gesture" of attempting to gain access during the statute of limitations period. *Id.* at 1136–1137. Plaintiff continued to suffer an injury by virtue of being deterred access. *Id.* at 1137. Additionally, in analyzing whether the plaintiff satisfied Article III's standing requirement for injunctive relief, the court held that personally encountering some barriers that prohibit access to a public accommodation, coupled with a desire and intention to return to the store if it is made accessible, is sufficient for pur-

---

8. As they are clearly satisfied, the causation and redressability elements are not at issue in this matter.

poses of standing. *Id.* at 1138. In the words of the Ninth Circuit, the plaintiff "has visited Holiday's Paradise store in the past and states that he has actual knowledge of the barriers to access at the store. [Plaintiff] also states that he prefers to shop at Holiday markets and that he would shop at the Paradise market if it were accessible. This is sufficient to establish actual or imminent injury for purposes of standing."[9] *Id.* at 1138.

In this case, Mr. Molski's Complaint alleges he suffered injury because he visited Arby's and while there he was deterred from fully using the facility due to Defendants' failure to provide handicapped accessible parking and restrooms. Mr. Molski alleges this caused him emotional and physical harm. Mr. Molski also alleges he was physically harmed when attempting to use the restroom at Arby's because it was not handicapped-accessible. Moreover, in Paragraph 42 of his Complaint, Mr. Molski alleges he would and will return to Arby's if it is made accessible to persons with disabilities. These allegations clearly satisfy Mr. Molski's burden of alleging actual or imminent injury for purposes of standing.[10]

Mr. Molski's motivation for visiting Arby's again is not relevant to the legal issue before the Court. What is critical to the Court's inquiry is whether he has alleged he suffered discrimination and because of his intention to return, will suffer discrimination again in the future. This Court agrees with the District Court's observation in *Molski v. Price:* "[t]he Court can find no authority that suggests that, in order to have standing to assert an ADA

---

**9.** Other cases addressing the standing of ADA plaintiffs seeking injunctive relief have similarly required a plaintiff to show past injury with an intention to return to the public accommodation. *See Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir.2000), *cited with approval in Pickern* (293 F.3d at 1138) (to show an injury in fact, plaintiffs must "at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."), *Shotz v. Cates,* 256 F.3d 1077, 1082 (11th Cir.2001) (plaintiffs did not have standing to pursue injunctive relief to require a courthouse's accessibility because they had not attempted to return to the courthouse and there was no allegation that they intended to do so in the future), *Molski v. Price,* 224 F.R.D. 479, 483 (C.D.Cal. 2004) (to establish standing, plaintiff must show he has an intention to return to the service station at issue) and *D'Lil v. Stardust Vacation Club,* 2001 WL 1825832, *3 (E.D.Cal.2001) ("To demonstrate a real threat of future harm, the plaintiff must establish a likelihood of returning to the defendants' premises.").

**10.** Defendants contend Mr. Molski has not demonstrated that he faces a real and immediate threat of future harm because Arby's is located 100 miles from Woodland Hills, where Mr. Molski resides, and Mr. Molski does not appear to have attempted to revisit the Arby's restaurant since January of 2003. While such evidence may demonstrate a lack of standing at successive stages in the litigation, it does not do so at the pleading stage. Because the elements for standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. Therefore, at the current pleading stage, when the Court is obligated to accept all material allegations as true, general factual assertions of injury and future harm are sufficient. At successive stages in the litigation, however, Mr. Molski may be required to submit additional evidence to support his standing. The Court notes that in evaluating whether Plaintiff's likelihood of return is sufficient to confer standing at the summary judgment stage, courts have examined factors such as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant. *D'Lil,* 2001 WL 1825832 at *3.

Title III claim for injunctive relief, a plaintiff must possess an intention to return to the inaccessible public accommodation that is not motivated in any way by advancing his litigation against that public accommodation." *Molski v. Price*, 224 F.R.D. 479, 483 (C.D.Cal.2004). Indeed, even when a plaintiff has visited a public accommodation for the purpose of "surveying which buildings were or were not accessible to him in his wheelchair," a District Court has found the standing elements satisfied. *Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I*, 1997 WL 33471623 *1 (D.Colo.1997). Regardless of the reasons underlying Mr. Molski's visit to Arby's, he alleges he confronted architectural barriers that precluded him from gaining full access and he will suffer the same discrimination if he revisits. This is the type of specific injury the ADA was enacted to prevent. While the filing of hundreds of lawsuits may impact Mr. Molski's credibility and the believability of his assertions that he intends to and will return to Arby's (*see, e.g., Rodriguez v. Investco, L.L.C.*, 305 F.Supp.2d 1278 (M.D.Fl.2004)), this is not an issue to be evaluated at the pleading stage.

Mr. Molski has established standing to seek injunctive relief at this early stage of the case. If Mr. Molski's allegations are true, he has suffered and continues to suffer an injury due to Defendants' conduct, and he is threatened with continued harm absent injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, the Court's December 27, 2004 Order to Show Cause is hereby discharged.